The Chief Justice
delivered the opinion of the court.
This cause comes before us on a writ of error to the Court of Common Pleas of the county of Essex. The action instituted in that court is upon a bond given to the plaintiff below, Moses Smith, as sheriff of that county, by Daniel K. Allen, one of the defendants and the others as his sureties, with condition that Allen, who had been arrested and was in custody under a capias ad satisfaciendum, should keep within the bounds of the prison of the county until discharged by due course of law; and the alleged breach of the condition is, that he had not so kept himself, but that he had walked out of and departed from the said bounds. A verdict and judgment were rendered for the plaintiff.
The questions raised on the assignment of errors are chiefly practical; and therefore derive some importance from the consideration that their influence will not be spent on this cause, but may furnish a rule of proceedure in others. They have been presented to us in written arguments prepared by the respective counsel of the parties, concerning which it is merely justice to say they ovince great industry, research, ability and learning.
In the examination I propose to make of the case, I shall follow the exceptions to the proceedings of the Court of Common Pleas as pointed out in the brief of the counsel of the plaintiffs *in error, rather than as contained in the assignment of errors, supposing that the brief shews-with precision the errors of which the plaintiffs complain, and that they have not intended to insist on any which are not there stated.
1. The first error alleged is that the plea of nil debet, pleaded by the defendants, was alleged to be insufficient.
In his treatise on pleading, Ohitty says nil dcbct is not a sufficient plea in debt on a bond setting out the condition *186 and breach. If the rule is correctly laid down by Ohitty and by Sergeant Williams in his note on Saunders, to which Ohitty refers, there is no longer any question on the propriety of the decision of the Court of Common Pleas; for the rule is to the very point. 1 Chitty 478; 2 Saund. 187, a note 2. And that it is correctly stated will, I think, abundantly appear by a recurrence to the principle on which it is founded. When the specialty is the ground or foundation of the action, nil debet is not a good plea; it is admissible only when the matter of fact is the foundation and the specialty is merely inducement. Now the bond is the foundation, where the action, when proper facts exist, is brought upon it; where the facts give occasion to the action on the bond. As in Winter v. Consett, 2 Lord Raym. 1500, the action was on the article of agreement, though the transfer and refusal to accept gave occasion to it. So in debt on bail bond. The action is on the bond, not on the omission to put in bail, although the latter leads or induces to the action. In these cases nil debet cannot be pleaded. On the other hand, in debt for an ’escape, the action is founded on the escape, not on the judgment which only leads to it. So in debt on a devastavit, the devastavit does not simply lead or induce to an action on the judgment, but is itself the very ground work of the action. Hence in these and similar cases nil debet may be pleaded. The present case is obviously within the first class. The action is not founded on the departure from the limits, but this departure having taken place, the bond stands absolute and forfeited, and upon it the action is grounded. The single fact that the action is against others besides the original defendant, the sureties in the bond, shews that the action is founded on the bond, as otherwise, by the departure only, the sureties would not be responsible. I find nothing to countenance the present plea but the *case of Minton v. Wood-worth, 11 John. 474, which it must be admitted is in point. After stating in the usual manner the general rule, the *187 court say that “ the specialty is but inducement and the escape is the foundation of the action.” The matter is thus shortly disposed of and without further illustration. For the reasons just given, I think the converse of this propositian is true, and I am not at liberty therefore to follow the case as a precedent. The same court seem to have entertained a different opinion in Jansen v. Ostrander, 1 Cowen 676, where they say “ Such a plea to a bond setting out the condition and breach is bad and may be demurred to.” In the case of Howard v. Blackford in this court, Penn. 777, nil debet having among other pleas been pleaded to an action on a bond for the limits was abandoned on the argument. “And,” said C. J. Kirkpatrick, “rightly,” for “nil debet to a bond on a general demurrer is bad.”
2d. The next error alleged is that the sixth plea filed by the defendants was adjudged insufficient.
We shall go far toward a just estimate of the sufficiency of this plea by correctly understanding the facts which it contains.
It alleges that the sheriff “by writing under his hand and seal, did depute and appoint Uriah Garrabrants for him and in his name to execute that writ,” the writ of capais ad satisfaciendum mentioned in the declaration ; and that the said writ being delivered to him “ as under -sheriff as aforesaid,” “ by virtue of it, and under color of his said office of under sheriff as aforesaid,” he arrested the said Daniel K. Allen, not having taken and subscribed the oath of office of under sheriff, nor filed his appointment and the certificate of the oath, in the clerk’s office, agreeably to the statute. Now the term, under sheriff, here used, must be understood in direct reference to the deputation and appointment previously mentioned, that is to say, to execute a particular writ; for the term is expressly restricted by the additional words “ as aforesaid,” recurring whenever it is found. “As under sheriff as aforesaid,” then meant as deputy of the sheriff, to execute that writ.
*188 There are two -kinds of deputies of a sheriff well known in practice. 1st. A general deputy, or under sheriff, who, by virtue of his appointment, has authority to execute all the ordinary duties of the office of sheriff. Com. Dig. tit. Viscount 542, B. 1. *He executes process without special power from the sheriff, and may even delegate authority in the name of the sheriff for its execution to a special deputy. 2d. A special deputy, who is an officer pro hac vice; to execute a particular writ on some certain occasion. He acts under a specific, not general appointment and authority.
Of these deputies, the latter is the one described in the plea; “ did depute and appoint Uriah Garrabrants, for him and in his name to execute that writ.”
The question then on this plea is, whether a special deputy to execute a particular writ is' bound to file his appointment and take an oath of office, before he executes the writ.
The statute referred to in the plea is the fifth section of the supplementary act concerning sheriffs. Rev. Laws 304. It relates to the office of under sheriff, provides for the manner of his appointment, prescribes an oath of office and directs the appointment and oath to be duly filed “ before he intermeddles in such office.” But this statute does not relate to a special deputy; nor does it take away the power of the sheriff to appoint a deputy to serve a particular writ. Its purpose was to regulate the appointment of the under sheriff, a general permanent officer, executing process, as already observed, by virtue of his appointment, in the stead and name of the sheriff, and oftentimes even without his knowledge, The authority of the sheriff to execute a writ by a deputy appointed for the occasion, is founded on the common law, abrogated by no statute, long practised in this state, repeatedly sanctioned, and productive of great convenience in the administration of justice.
The clause frequently introduced into special deputations and referred to by the plaintiffs’ counsel, “ to be done at the *189 risk and request of the plaintiff,” does not, so far as I understand its history, grow out of any doubt of the validity of such deputations. When the deputy is selected and employed by the sheriff himself, such a clause is unusual. When he is named by the plaintiff and acts at his suggestion and is perhaps a stranger to the sheriff, the clause -is introduced, how far it may answer the purpose I need not say, for his protection and indemnity. In De Moranda v. Dunkin, 4 Term Rep. 119, the court refused a rule on the sheriff to return the writ, not because a special bailiff could not *be appointed, but because having been appointed on the nomination of the plaintiff himself, the latter must take the consequence of the acts of the former. The like in Hamilton v. Dalziel, 2 W. Blac. 952; to which we were referred by the plaintiffs’ counsel.
The question as presented by this plea is fully and long since settled in the English courts. The under sheriff is required by the statute 27 Eliz. chap. 12, to take an oath of office, the form of which is prescribed by 3 Geo. 1 c. 15. But a special bailiff or one employed for a particular time only, is not obliged to take this oath. Comyn Dig. Viscount, B. 1; ibid. E. 2 ; 4 Bac. abr. 437, tit. Sheriff II. 1.
This plea, therefore, was, in my opinion, rightly adjudged by the Court of Common Pleas to be insufficient.
3. The third error is assigned upon one of the bills of exceptions taken at the trial.
In the fifth plea, the defendant alleged that the supposed prison limits mentioned in the declaration were never marked and laid out by the Court of Common Pleas and recorded by the clerk. The plaintiff replied that before the bond was given, the court did mark and lay out the bounds, &c., and that the same were duly recorded, &c.; and issue to the country was joined. On the trial the plaintiff offered in evidence “ a record purporting to be a record and map of the prison limits of the county of Essex,” as laid out by the Court *190 of Common Pleas and recorded by the clerk. To the admission of this record the defendants objected, the court overruled the objection, and a bill of exceptions was sealed.
The plaintiffs in error insist, this document ought not to have been admitted, because although it purports to have been a compliance by the court with the 101st section of the practice act, in marking and laying out the bounds of the prison; yet it was not a legal compliance, inasmuch as “ the limits are run out by mere courses and distances and a map made of them and recorded, when it was incumbent on the court to have fixed visible marks, so that every person might see how far the limits extended, and not be obliged to carry in his mind the idea of a mere imaginary line.”
*The objection on this ground, at the trial, appears to me to have been raised prematurely. It is pointed not against the admissibility of the record, but against its sufficiency when produced to maintain the issue. If the record did not shew a compliance with the statute in such manner as to sustain the affirmative allegation of the plaintiff in his replication that the court did mark and lay out the bounds of the prison, the defendants should have called on the court so to instruct the jury, and that the issue should consequently be found for them. The preliminary proof being given, such as that the document produced was the .record or an exemplification,- it was proper to be read and its sufficiency afterwards examined. If, however, the objection was aptly taken, it appears to me it ought not to have prevailed. The courts of commompleas are “to mark and lay out the bounds and rules of the prisons in their several counties” — “which marks and bounds shall be recorded by the clerk of the said court.” It is vepy obvious the word “ mark ” is not h'ere used in a literal sense, as insisted by the counsel of the plaintiffs in error when they allege the court should have fixed visible marks. If the term is to be literally construed, the court should have perambulated. the limits and made their mark around the whole; nor would it suffice to *191 liave stones or monuments at convenient distances; for as they are to mark the bounds, the mark must be every where, and consequently the stone or monument must surround the whole. Again, how mark ? if it is to be done literally. Will a ditch around the limits suffice, or must a stone wall designate them ? The legislature did not, as I apprehend, intend to use the word in a literal sense. To mark, as they meant, is to point out, to settle, to define, to describe; and as such may be completed without fixing any visible marks or boundaries on the ground. Inasmuch as tho bill of exceptions does not contain a copy of the record, and as we have not been furnished with it, we know not in what manner the court did mark and lay out the bounds in question. If, as would seem from the brief of the plaintiffs in error, the description given by the court and contained in the record was by courses and distances, although it might perhaps justly be said, that a more convenient and practically useful description could have been given, yet I think we should be bound to say the limits *were marked and laid out within the scope of the language of the statute. In Howard v. Blackford, already cited, the limits of the same prison, though designated by no. visible marks or objects, are not in this respect disapproved by either counsel or court.
4. The fourth error. From one of the bills uf exceptions it appears that after tho plaintiff had closed his evidence, the defendants produced the original summons issued in the cause, which bore teste in April term, 1826, and was returnable at a day in the, succeeding June term, and as the departure of Allen from the limits was shewn by the plaintiff’s evidence to have been on the 19th or 20th of May, they insisted that it appeared the suit was commenced before he had gone off the limits, or in other words, before the cause of action accrued; and that the plaintiff should therefore be non-suited.
*192 There are two views of the case which satisfactorily shew ( .that the motion for non-suit was properly overruled.
1. The teste of our process of capias or summons, on some day of a term, sometimes the last, but perhaps more usually the first day, is a mere fiction or form of law, and I think I might venture to add, without having now very satisfactory reasons to sustain it. Nothing, however, is more wide of reality than that it shews the day on which the writ .was in truth sued out or the suit actually commenced. Which of the most busy attorneys of this court ever issued a writ on the day of its teste? Inasmuch, however, as the cause of action may arise in the vacation, the plaintiff is allowed, to avoid delay and other manifest inconveniences, to make the teste of the writ of the- antecedent term, although prior to the time when the cause of action arose ; and both parties are permitted, notwithstanding the teste, to shew the true time of issuing the writ, whensoever it may become material to .their rights or interests to do so. It is therefore a rule that the capias may bear teste before the cause of action, provided that it be not taken out, or at least that the defendant be not arrested until afterwards. The rule is so expressed by Archbold. I Arch. pr. 66. In Oomyn’s Digest, Action 222, it is said, “If the process is returnable after the cause of action, though ,it bears teste the last day of the preceding term which was before the cause of action, it is not error.” In Hanway *v. Merrey, 1 Ventr. 28, the court said, a man may take out a latitat before the money is due yet the party must not be arrested on it before. Inasmuch then as the writ may lawfully bear'teste before the accrual of the cause of action, it does not follow from the teste of the writ alone, that the writ was prematurely issued. The mere production of the writ in the present case, bearing teste in April did not prove that it was actually issued before the 19th of May; and hence did not of itself sustain the defendant’s ground of uon-suit.
*193 2. It is clearly settled that the true time of the issuing of process may be shewn notwithstanding its teste. Johnson v. Smith, 2 Burr. 962. The plaintiff, when this objection was made, offered evidence for this purpose.
The clerk of the court testified that he had no distinct recollection of the time the summons was sealed or issued, but was under the impression it was in June term, 1826; and was under the impression it was after the defendant had left the limits, but it might have been in April term. He could nor say whether he put the seal on with his own hands. If he sealed the summons himself it was after the defendant had broken the limits. Henry Ford testified the writ was delivered by the plaintiff to him as a coroner on the 2d of June, to he served and was served the same day. Andrew Parsons testified that the sheriff offered to the Paterson Bank at whose writ the execution against Allen was issued, after the witness had seen Allen off the limits, to assign to the bank the bond for the limits, which the hank refused, but were willing to wait for the sheriff and to let their attorney put the bond in suit in the name of and for the sheriff.
The evidence of these witnesses was, I am inclined to think, quite sufficient to show that the writ was actually ■sued out after the broach of the limits by the defendant Allen; but to say the least of it, there was some evidence ■ and if so, sufficient to require the court to put the question of fact to the jury and to refuse the non-suit.
In both points of view, the motion for non-suit was, I think, rightly overruled.
In connection with this exception, the counsel of the plaintiffs in error in their brief “ direct the attention of the ■court to the fact that at the time of the breach of the prison limits laid in *the declaration, the defendant was in actual confinement.” The time of the broach, as aliened, is the first day of May, and the earliest day named in the evidence is the 19th or 20th of May; and although they say *194 they do not require the day to be proved exactly as laid* yet that the day laid should be on or after that on whic the breach actually took place.
Of this difficulty, it is a sufficient solution, 'that no objection on this score was raised at the trial. It may be deem to have been waived. The grounds taken on the motion for non-suit are specifically stated in the bill of exceptions and this is not one of them. It is not competent for a plainti in error to draw into question on a bill of exceptions point not raised nor, objected to on the trial. Every motive of policy and convenience forbids. So does the nature of the proceeding. - “ When any person shall allege an exception,” says the statute, Rev. Laws 293, “ praying that the justice will allow it, and he will not allow it if he who alleges th exception instantly writes the same,” the justice shall put his seal thereto. In Walton v. The United States, 9 Wheat. 667, the court said, no bill of exceptions is valid which is not for matter excepted to at the trial. • In Hinde v. Longworth, 11 Wheat. 209, the court' say, as a general rule -the party ought to be confined in examining the admissibility of evidence to the specific objections taken at the trial. Wright v. Sharp, 1 Salk. 238; Van Gorden v. Jackson, 5 John. 467; Fries v. Jackson, 8 John. 507.
If, however, the exception may now be examined, no legal support for it will be found. The rules of pleading do not require the day to be laid on or after the act done, when the time is not material nor necessary to be proved exactly as laid. Co. Lit. 283, a. 2 Str. 806. Even in treason, an objection that the overt acts proved were Subsequent to the time laid in the indictment was overruled. Townley’s case, Foster 8.
6. The fifth error. Another bill of exceptions was taken to the charge of the court to the jury in relation to the damages.
The declaration in this action is not merely upon the penal part of the bond, but sets out the condi *195 tion and contains an assignment of the breach in pursuance of the fifth section of the act concerning obligations, Rev. Laws 307, which has been taken almost literally from the statute of 8th and 9th Wm. 3. *It concludes thus : “ By means whereof and by force of the statute, &c., an action hath accrued to the said Moses Smith, sheriff as aforesaid, to demand and have of and from the said D. K. Allen, W. Oobb and R. Garrick, the said sum of 83,105.58 cts. [the penalty] above demanded. Yet the said D. K. Allen, &c., have not as yet paid, &c., the said sum of §3,105.58, but neglected, &c., to his damage §50. And therefore, &c.” The defendants prayed the court to instruct the jury that they could not assess the damages at a greater sum than $50; but the court refused so to charge, and did charge that the damages laid in the conclusion of the declaration were merely nominal, and that the jury had a right to exceed that amount in the assessment.
This charge to the jury was, I think, unexceptionable. The damages they were about to assess were, not merely the damages for the detention of the debt, but, according to the provision of the statute, for the breach which the plaintiff had assigned and which he had proved. The damages mentioned ' in the conclusion of the declaration are for the detention of the debt, pro detentione debitis; and however in assessing damages on that account, the jury ought not to exceed the amount laid by the plaintiff, the same limit is not prescribed to them, when making, diverso intuitu, an assessment for the breach. -It is true that Chitty directs “ the amount of the penalty or upwards,” to be inserted in the conclusion of the declaration, 2 Chitty, 156 note; and Arch-bold says, it is usual to do so, Arch. pi. 170. But neither refers to any authority, nor do I find any case on the point. Sergeant Williams, however, in his note, 2 Saund. 187, c., directs that the declaration should conclude, not as in covenant, but as in debt; where the damages are, in general, formal and nominal only, and a small sum is usually inserted. *196 1 Qhitty pi. 360. Before* the statute 8th and 9th Wm. 3, the plaintiff had judgment for the penalty and nominal damages and costs, and was entitled to execution for the ■whole. 1 Saund. 58 n. 1. Under the statute the jury are to assess the damages for the breaches, besides a verdict as before; and judgment is to be entered for the penalty, nominal damages and costs, without including the damages assessed for the breaches by the j ury. 1 Saund. ibid ; 1 Dunlap prac. 392. In Smith v. Jansen, 8 John. *115, Keht, J., said, “ It would seem to be the better construction of the act that the assessment is only to regulate the sum to be levie'd on the execution, and that judgment is to be entered as if there had been no assessment.”
Hence it follows that as 'the damages assessed for the breach are not to be included in the judgment, but the. damages for detention only and costs, there will be no incongruity between the amount in the conclusion of the declaration and the amount in the judgment, by reason of the amount of damages for the breach being, as it will generally perhaps always be, greater than for the detention of the debt. I can perceive no satisfactory reason for the direction given by Ohitty, which has afforded the foundation of the exception now under consideration, and I can find in it no authoritative force. This direction I am warranted in saying has not been the rule ef our practice. And the case of Hankin v. Broomhead, 3 Bos. and Pul. 607, shews that it is not adhered to in England. The damages were there laid at 200Z. The assessment was to a much larger sum; and no objection on that ground was made. The precedents in the English books farther shew that it is not adhered to there. In 5 Wentworth, 490, the penalty was 100Z. the damages in the conclusion, 20l. In Plead. Ass. 366, the penalty, 100l. the damages, 5l. In 2 Saund. 80, the penalty, 100l. the damages, 10l. In 5 Wentw. 548, the penalty, 3000l. the damages, 20l. : And of these, the first three were on *197 bonds of the same kind as the precedent in Ohitty; and the whole may be justly said to outweigh his unsupported direction.
6. The next error alleged in the plaintiffs’ brief is that the jury have actually found a greater sum of damages than $50. What T have already remarked on the last point furnishes a satisfactory answer, in my judgment, to this alleged error.
7. The last error urged in the plaintiffs’ brief is in the amount of the damages adjudged by the court for the detention of the debt as well as for the costs and charges. The amount so adjudged is $68.46, exceeding the 50 dollars claimed as damages in the declaration; and herein, it is said, is error. The sum mentioned in the judgment, it is to be observed, is not merely damages for the detention of the debt. If so, it would be erroneous, as beyond the sum demanded. But it is also in part *for the costs and
charges; and the amount of both damages and costs, may exceed the sum claimed in the conclusion of the declaration. Pilfold’s case, 10 Co. 115, is in point in answer to this alleged error. Pilfold brought trespass against Dawks, and laid his damages at 40l. and had judgment for 40l. damages with costs, and costs of increase, amounting in all to 50l. Error was assigned for that the damages and costs together, amounted to more than the .damages alleged in the declaration. The subject was very fully discussed, and the court agreed it to bo good law that the plaintiff shall never recover more damages than he has declared for, that is to say, damages for the wrong done, but expenses litis may be added thereto ; and the judgment was affirmed.
Upon the whole, 1 find no sufficient cause for the reversal of the judgment.
Ford, J., and Drake, J., concurred.
Judgment affirmed.